UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,  No. 15-cr-182 (DWF/LIB)

    Plaintiff,

v.  **REPORT AND RECOMMENDATION**

William Ike Libby, Jr.,

    Defendant.

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the parties' pretrial motions. The Court held a motions hearing on August 3, 2015, regarding the parties' pretrial motions.[1] The parties declined the opportunity to submit supplemental briefing regarding Defendant's Motion to Suppress Evidence Due to Illegal Stop and Search, [Docket No. 13], and the Court took Defendant's Motion to Suppress Evidence Due to Illegal Stop and Search, [Docket No. 13], under advisement on August 3, 2015.

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Evidence Due to Illegal Stop and Search, [Docket No. 13], be **DENIED**.

## I. BACKGROUND AND STATEMENT OF FACTS

### A. Background

On June 9, 2015, Defendant William Ike Libby, Jr. ("Defendant"), was indicted with one count of being a felon in possession of a firearm – armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Indictment [Docket No. 1]).

---

[1]The Court addressed the Government's pretrial discovery motion by separate order, [Docket No. 19].

1

B. **Facts**

On April 19, 2015, Investigator Daniel Skoog of the Becker County Sheriff's Department received information from a confidential informant ("CI") indicating that the CI had seen Defendant, for whom there were active arrest warrants, in possession of methamphetamine and a firearm within the preceding twenty-four (24) hours. (Govt. Ex 1, Application, 2; see also August 3, 2015, Motions Hearing, Digital Recording at 2:05:20 p.m.). The CI provided Investigator Skoog with two telephone numbers that the CI had recently used to speak to Defendant. (Govt. Ex 1, Application at 3). At approximately 6:00 p.m. that evening, Investigator Skoog informed Minnesota Bureau of Criminal Apprehension Special Agent William Bennett ("SA Bennett") that the CI had just used one of those telephone numbers to converse with Defendant. (Id.). SA Bennett confirmed that the two telephone numbers were associated with cellular telephones for which there were active accounts with a cellular telephone service provider. (Id.).

Using the information provided by the CI, SA Bennett applied for and obtained a warrant to track the cellular phones using the two telephone numbers provided by the CI. (Gov't Ex. 1, Order). During the early morning hours of April 20, 2015, Investigator Skoog received information from the CI that Defendant was at a residence located at lot 17 in the Country Manor Trailer Park and that Defendant may have been driving a Chevy Tahoe. (August 3, 2015, Motions Hearing, Digital Recording at 1:42:05 p.m.; 1:54:35-1:55:40 p.m.; 1:57:50 p.m.). Using tracking technology, SA Bennett also located the cellular phones at lot 17 of the Country Manor Trailer Park. (Id. at 1:36:15 p.m.; 1:42:20 p.m.; 1:54:35-1:55:40 p.m.). A Chevy Tahoe that SA Bennett had been informed by other officers was associated with Defendant was parked at a trailer home at that location. (Id. at 1:38:20 p.m.; 1:38:55 p.m.). SA Bennett set up surveillance

of the trailer home on lot 17 and took a position approximately 300 yards away to watch for vehicles leaving the residence. (Id. at 1:38:35 p.m.). Investigator Skoog also took a position watching the trailer home and asked Sergeant Andrew Bachman of the Becker County Sheriff's Department to be in the area to be ready to intercept vehicles leaving the residence. (Id. at 1:43:00 p.m.; 1:55:00 p.m.; 2:05:25 p.m.).

While SA Bennett and Investigator Skoog were watching the trailer at lot 17, the Chevy Tahoe was driven away from the property. (Id. at 1:55:35 p.m.). It was the only vehicle to leave the residence during that time.[2] (Id. at 1:56:15 p.m.). Neither SA Bennett nor Investigator Skoog were able to see whether the Defendant had gotten into the Chevy Tahoe before it was driven away from the residence. (Id. at 1:38:40 p.m.; 1:39:05 p.m.; Id. at 1:57:00 p.m.). However, after the Chevy Tahoe was driven away, SA Bennett and Investigator Skoog immediately drove by the residence on lot 17 and used the cellular telephone tracking technology to determine that the tracked cellular telephones were no longer at the residence. (Id. at 1:36:15 p.m.; 1:55:35 p.m.-1:55:45 p.m.). Believing that the phones and Defendant were in the Chevy Tahoe, Investigator Skoog directed Sgt. Bachmann to stop the Chevy Tahoe. (Id. at 1:57:15 p.m.).

Sgt. Bachmann began following the Chevy Tahoe and pulled behind it, intending to activate his squad car's emergency lights to initiate a stop of the vehicle. (Id. at 2:02:55 p.m.). While he was following the vehicle, Sgt. Bachmann did not see the driver of the Chevy Tahoe violate any traffic laws. (Id. at 2:05:45 p.m.). Moments before Sgt. Bachmann activated his lights, the Chevy Tahoe began to pull into a driveway at 728 Richwood Road. (Id. at 1:44:00

---

[2] Investigator Bennett testified both that the Chevy Tahoe was the "last" vehicle to leave lot 17 and that it was the "only" vehicle to leave that residence. (See August 3, 2015, Motions Hearing, Digital Recording at 1:56:20 p m.; see also Id. at 1:59:05 p.m.). There was, however, no testimony that any other vehicle left the residence while the officers were watching it.

3

p.m.; 2:03:15 p.m.). Before the Tahoe came to a stop, Sgt. Bachmann activated his emergency lights. (Id. at 2:30:15; 2:05:55 p.m.). As Sgt. Bachmann was bringing his vehicle to a stop, the driver of the Chevy Tahoe got out and immediately fled the scene on foot. (Id. at 2:03:40 p.m.-2:04:10 pm.). Sgt. Bachmann could see that the fleeing driver had on a dark colored sweatshirt or jacket and was carrying a gray patterned backpack with a blue stripe. (Id. at 2:03:40 p.m.-2:04:10 pm.).

Sgt. Bachmann determined that there was a passenger still in the Chevy Tahoe and remained with the passenger while other officers set up a perimeter. (Id. at 1:44:15 p.m.; 2:07:00 p.m.). Sgt. Bachmann asked the passenger whether Defendant had been the person to flee. (Id. at 2:07:20 p.m.). The passenger confirmed that it was Defendant who had fled the vehicle. (Id. at 2:07:30 p.m.).

SA Bennett and Investigator Skoog eventually located Defendant lying on the ground next to the side of an outbuilding at 729 Anders Avenue, approximately 200 feet away from the Chevy Tahoe, and it was there they arrested him. (Id. at 1:44:30 p.m.-1:45:45 p.m.; 1:56:55 p.m.). The backyards of 729 Anders Avenue and 728 Richwood Road are adjacent but separated by a chain link fence. (Id. at 1:53:50 p.m.-1:54:00 p.m.). After being arrested, Defendant told Investigator Skoog that he had thrown a backpack over a fence while he was fleeing. (Id. at 1:54:15 p.m.). A backpack was later discovered on the east side of a wooden fence in the backyard of 728 Richwood Road, approximately 65 feet from where Defendant was arrested. (Id. at 1:44:40 p.m.; 1:45:00 p.m.). Officers also discovered a remote car starter key fob in the same backyard laying in the grass. (Id. at 1:48:55 p.m.-1:49:30 p.m.). Officers also discovered a handgun openly lying in the grass of the backyard of 729 Anders Avenue. (Id. at 1:49:30 p.m.-1:49:50 p.m.). Sgt. Bachmann later recognized the backpack that the other officers had found as

the one he observed being carried by Defendant when he fled the Chevy Tahoe. (Id. at 2:04:45 p.m.). Officers later searched the contents of the backpack and found a second firearm inside along with personal items identifying Defendant. (Id. at 1:50:55 p.m.-1:51:15 p.m.).

On June 26, 2015, Defendant filed the present Motion to Suppress Evidence Due to Illegal Stop and Search, [Docket No. 13].

## II. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DUE TO ILLEGAL STOP AND SEARCH [DOCKET NO. 13].

Defendant moves the Court to suppress evidence of the guns and the contents of the backpack. Defendant argues that Sgt. Bachmann's stop of his vehicle was unlawful.

### A. Standard of Review

"A stop of a motor vehicle is a seizure under the Fourth Amendment." United States v. Stachowiak, 521 F.3d 852, 855 (8th Cir. 2008) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)). In order to lawfully stop a vehicle, the officer must have a reasonable suspicion that an occupant of the vehicle is engaged in illegal activity. (Id.). For an officer's suspicion to be reasonable, it must be based on particularized, objective facts, along with rational inferences from those facts, as would warrant a reasonable person in suspecting that a crime is being committed. United States v. Smith, 648 F.3d 654, 658 (8th Cir. 2011) (quoting United States v. Jones, 269 F.3d 919, 927 (8th Cir. 2001) (citations omitted). In assessing whether police had the requisite "reasonable suspicion," a court examines the totality of the circumstances including the collective knowledge and experience of the officers. United States v. Chhunn, 11 F.3d 107, 110 (8th Cir. 1993).

However, mere police pursuit of a vehicle does not constitute a seizure for the purposes of the Fourth Amendment. Cole v. Bone, 993 F.2d 1328, 1332 (8th Cir. 1993). Police pursuit constitutes a seizure at the point when the pursuit, as a show of police authority, actually results

in a stop of the person. Id. When a pursued suspect is ultimately seized by law enforcement, items that the suspect previously abandoned while still fleeing the pursuit are not the product of the ultimate seizure. California v. Hodari D., 499 U.S. 621, 629 (1991).

**B. Analysis**

Defendant contends that evidence against him must be suppressed, arguing that the stop of his vehicle was unlawful because the officers should have been required to first affirmatively identify him as an occupant of the Chevy Tahoe in order to lawfully stop the vehicle to effect the active fugitive warrant for his arrest. (Motion to Suppress Evidence Due to Illegal Stop and Search, [Docket No. 13], 2).

Defendant's argument is based on several incorrect premises. First, an officer needs only a reasonable articulable suspicion that an occupant of a vehicle is committing a crime in order to lawfully stop the vehicle to investigate the suspected crime. Stachowiak, 521 F.3d at 855. That same standard applies whether there is an active arrest warrant for the person suspected of being in a vehicle or not.[3] See United States v. Neemann, 61 F. Supp. 2d 944, 947 (D. Neb. 1999) (concluding that officer's reasonable, but ultimately incorrect, suspicion that passenger of a vehicle was the subject of an arrest warrant was a sufficient basis to lawfully stop the vehicle to investigate the identity of the occupant). Here, under the totality of the circumstances, the officers had an objectively reasonable suspicion based on articulable facts that Defendant was in the Chevy Tahoe when they attempted to stop it. The CI, whose credibility Defendant does not contest, told law enforcement that Defendant was using two telephone numbers, was probably

---

[3] It would strain logic to conclude that the existence of an arrest warrant for the occupant of a vehicle would raise the level of suspicion of criminal activity necessary to lawfully stop a vehicle. Even when executing an arrest warrant within a suspect's home, police need only a reasonable belief that the subject of the warrant is in the home in order to enter it. United States v. Glover, 746 F.3d 369, 373 (8th Cir. 2014) (citing United States v. Powell, 379 F.3d 520, 523 (8th Cir. 2004)).

6

driving a Chevy Tahoe, and was at a trailer home on lot 17 in the Country Manor Trailer Park. By using tracking technology, the officers determined that both the telephones and a Chevy Tahoe were indeed at a trailer home on lot 17 in the Country Manor Trailer Park, which corroborated the details provided by the CI. The officers then set up surveillance of that trailer home. As the officers watched, the Chevy Tahoe was driven away from the trailer home. Using tracking technology, the officers immediately learned at that time that the two phones were no longer at the residence. As the Chevy Tahoe was the only vehicle to leave the residence while the officers were watching and the phones were present at the residence while the Chevy Tahoe was there and were immediately absent after the Chevy Tahoe left, the officers' suspicion that Defendant, with whom the phones were associated, was in the Chevy Tahoe was objectively reasonable. As the only police conduct on which Defendant challenges the admissibility of the evidence was in fact legal, the Court could deny Defendant's motion on that basis alone.

However, the discovery of the guns and the backpack was not the product of a stop under the Fourth Amendment. The testimony at the motions hearing indicates that Defendant did not submit to Sgt. Bachmann's attempt to initiate a stop of the Chevy Tahoe, but instead, the Defendant got out of the vehicle before Sgt. Bachmann was able to stop his car and Defendant continued fleeing on foot. An officer's show of force in an attempt to stop a vehicle does not result in a seizure until the suspect being pursued actually submits to the show of force. Cole, 993 F.2d at 1332. In addition, Defendant voluntarily relinquished the backpack and guns <u>while he was fleeing</u>. As such, even though Defendant was ultimately caught and arrested at the <u>end</u> of the pursuit, which only at that later time resulted in a seizure, Defendant's earlier abandonment of those items was not the product of the later seizure. Hodari, 499 U.S. at 629.

7

Finally, and most importantly, Defendant abandoned the backpack and cannot now challenge the admissibility of it or the gun and other contents inside it under the Fourth Amendment.[4] "The warrantless seizure of abandoned property does not violate the Fourth Amendment." United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994) (citing Abel v. United States, 362 U.S. 217, 241 (1960)). "This is because '[w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had.'" Id. (citing United States v. Jones, 707 F.2d 1169, 1172 (10th Cir. 1983)). "The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary." Id. (citing Jones, 707 F.2d at 1172). "In determining whether property has been abandoned for Fourth Amendment purposes, the court must look to the totality of the circumstances, noting in particular two factors: whether the suspect denied ownership of the property and whether he physically relinquished the property." United States v. Liu, 180 F.3d 957, 960 (8th Cir. 1999) (citing United States v. Landry, 154 F.3d 897, 899 (8th Cir.1998), cert. denied, 525 U.S. 1086 (1999)).

It is clear that Defendant physically relinquished the gun and the backpack when he threw them away while fleeing the officers. Although there was no evidence introduced into the record at the motions hearing regarding whether Defendant verbally denied ownership of the items, the Court notes that a person may be found to have abandoned his property through mere physical relinquishment. Liu, 180 F.3d at 960 ("[A] verbal disclaimer of ownership is not required for a finding of abandonment.") (citations omitted). In light of Defendant's clear physical

---

[4] The Court also notes that the handgun and the car starter key fob that the officers found openly lying in the grass as they searched the area would be admissible pursuant to the plain-view exception to the warrant requirement. Horton v. California, 496 U.S. 128, 133-34, 110 S. Ct. 2301, 2306, 110 L. Ed. 2d 112 (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy.") (citations omitted).

relinquishment of the backpack and the guns, the Court concludes that Defendant abandoned the backpack and its contents and, therefore, has no reasonable expectation of privacy in either.

In light of all of the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Evidence Due to Illegal Stop and Search, [Docket No. 13].

## IV. CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Due to Illegal Stop and Search, [Docket No. 13], be **DENIED**.

Dated: August 10, 2015
s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.