# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 15-182 (DWF/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| William Ike Libby, Jr., | |
| Defendant. | |

William Ike Libby, Jr., Defendant, *pro se*.

Craig R. Baune and Katharine T. Buzicky, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant William Ike Libby, Jr.'s ("Libby")

*pro se* motion for release in light of the COVID-19 pandemic.[1] (Doc. No. 157

---

[1] The Court also received and considered Libby's addendum to his Motion (Doc. No. 160 ("Addend."), supplement including a letter from his chaplain in support of Libby's release (Doc. No. 165 ("Supp. 1")), second supplement detailing his concern that staff at his facility were negligent with respect to COVID-19 (Doc. No. 181 ("Supp. 2")), third supplement expressing concern over number of COVID-19 cases in his facility and continued belief that staff is responsible for outbreaks (Doc. No. 182 ("Supp. 3")), and letters from his fiancé and sister in support of his release (Doc. Nos. 173, 180 (collectively, ("Letters of Support")).)

While Libby specifically cites 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release") as grounds for his release, he also mentions the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020) and release to home confinement. Accordingly, the Court construes Libby's Motion for relief under both the CARES Act and Compassionate release. As discussed below, the Court finds that Libby's Motion fails under either analysis.

("Motion").) The United States of America (the "Government") opposes Libby's Motion.[2] (Doc. No. 168.) For the reasons discussed below, the Court respectfully denies Libby's Motion.[3]

---

[2] The Court also received and considered Libby's responses to the Government's opposition filed on January 21, 2021. (Doc. Nos. 183 ("Reply 1"); 184 ("Reply 2").

Libby's reply was initially due October 8, 2020. (Doc. No. 164.) On September 24, 2020, the Government requested a one-week extension to file its opposition. (Doc. No. 166.) The Court granted that request, also extending Libby's deadline until October 15, 2020. (Doc. No. 167.) On September 29, 2020, Libby requested an additional extension due to the law library at his facility barring access to mitigate the spread of COVID-19. (Doc. No. 171.) On October 8, 2020, the Court granted Libby's request, extending his deadline to file a reply until January 6, 2021. (Doc. No. 172.) Unaware that his request for an extension had been granted, Libby filed a second request for a time extension on October 13, 2020 (Doc. No. 175) and an initial reply on October 19, 2020 (Doc. No. 177). After learning that his deadline had been extended to January 6, 2021, Libby asked the Court to withdraw his initial reply. (Doc. No. 178.) The Court grants his request and considers only the Replies he filed on January 21, 2021. Moreover, the Court denies as moot his second request for a time extension.

On January 21, Libby also filed self-styled "*pro se* supplemental motion to Government's response" to his Motion. (Doc. No. 185 ("Supp. Motion"). He asks the Court to "add this supplemental motion to the [Reply 1] enclosed, due January 6, 2020." (*Id*. at 1.) He then reiterates the arguments he made in his previous responses, including that he continues to suffer effects from having previously contracted COVID-19 and that staff at his facility fail to take appropriate precautionary measures to prevent the spread of the virus. (*Id.*) Libby also includes a variety of documents, including a release plan, his inmate education data, various certificates, confirmation that he tested positive for COVID-19, and notices about inmates dying from the virus in a variety of facilities. (*Id.*) He previously submitted several of these documents. Based on the content of Supp. Motion and Libby's own request that the Court consider it as a supplement to his Reply 1, the Court denies the Supp. Motion as moot but considers its content as a supplemental reply to his Motion. The Court notes that while it need not consider the Supp. Motion at all, it does so out of deference to Libby as a *pro se* litigant.

[3] Libby also requested that the Court appoint him a public defender (Doc. No. 161 ("Request").) "[T]here is no general right to counsel in post-conviction habeas proceedings for criminal defendants." *United States v. Craycraft*, 167 F.3d 451, 455 (8th

## BACKGROUND

On March 24, 2016, Libby pled guilty to one count of Felon in Possession of a Firearm-Armed Career Criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. Nos. 96, 97.)  On December 22, 2016, this Court sentenced him to 180 months' imprisonment followed by a 5-year term of supervised released.[4]  (Doc. Nos. 124, 125.)

On December 30, 2016, Libby appealed his sentence to the Eighth Circuit on the grounds that this Court erred when it found that his 1997 conviction for first degree aggravated robbery was a "violent felony" under the ACCA.[5]  (*See* Doc. No. 139.)  The Eighth Circuit affirmed this Court's decision on January 26, 2018.  (*Id.*).

Libby is currently incarcerated at Fairton FCI in Fairton, NJ with an anticipated release date of February 11, 2028.  Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited Jan. 25, 2021).  Fairton FCI reports 29 active COVID-19 CASES among its inmates and 27 among its staff, and 255 inmates and 17 staff who have recovered from COVID-19.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Jan. 25, 2021).  Sadly, one

---

Cir. 1999); *Pollard v. Delo*, 28 F.3d 887, 888 (8th Cir. 1994).  The Court respectfully denies Libby's Request.

[4]   Libby had previously been convicted of three separate offenses:  first degree aggravated robbery and second-degree assault in October 1997, and second-degree drug sale in January 2010, each of which the Court considered "violent felonies" or "serious drug offenses."  Accordingly, the Court sentenced Libby pursuant to the Armed Career Criminal Act ("ACCA") and applied the fifteen-year mandatory minimum sentence provided in 18 U.S.C. § 924(e)1.  (*See* Doc. Nos. 106 ¶ 17; 125.)

[5]   Libby filed an Amended Notice of Appeal on January 3, 2017.  (Doc. No. 133.)

3

inmate at the facility has died.  (*Id.*)  To date, the Bureau of Prisons ("BOP") has performed 888 tests for COVID-19 at Fairton FCI with 301 of them positive for the virus.  *Id.*

Libby now moves for release in light of the COVID-19 pandemic.  Libby asserts that release is warranted because he is a Native American with a history of smoking who tested positive for COVID-19 on June 14, 2020, and because:  (1) he has served nearly half of his sentence; (2) he has committed himself to rehabilitation; (3) he does not have any disciplinary reports; (4) he has maintained employment while incarcerated; (5) he has paid his court fines; and (6) "there is no violence in his case."  (Motion at 3, 7-8; Reply 1 at 1-9; Reply 2 at 1-13; *see also* Doc. No. 157-1 (positive COVID-19 test); Doc. No. 169 ("Medical Records"); Addend. Ex. 1 at 2-19 (detailing accomplishments while incarcerated); Supp. 1 at 5 (letter of support from pastor at Fairton FCI); Letters of Support.)  Libby also expresses general anxiety about his susceptibility to the COVID-19 virus in a prison setting.[6]  (Motion at 3; Supp. 1 at 1-2; Supp. 2 at 2; Supp. 3 at 2-3; Reply 1 at 5-6; Reply 2 at 1-11; Supp. Motion at 1-2.)

---

[6]   Libby contends that medical staff presence in his unit has been low, the masks his facility has provided are insufficient, and staff are not conducting temperature checks.  (Supp. 1 at 1-2.)  He also asserts that after testing positive, a staff member exposed 6 inmates to the virus, (Supp. 2 at 2), and that the staff at his facility take no precautions to curb the spread of the virus (Supp. 3 at 2-3).  He asserts that his fear is heightened because he has already contracted the virus once and continues to suffer lingering effects and because he has a history of smoking.  (*See* Supp. 3; Reply 1 at 3-6; Reply 2 at 3-7.)  In his Reply 2, Libby argues that social distancing is impossible and reiterates that staff at his facility have failed to take appropriate precautionary measures to mitigate the spread of the virus, and medical staff are not doing enough to help sick inmates.  (Reply 2 at 2-6.)  He contends that he lives through the virus "on a day-to-day basis."  (*Id.* at 2.)

## DISCUSSION

### I.   The CARES Act

The First Step Act ("FSA") was enacted into law on December 21, 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194. As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007. *See* 18 U.S.C. § 3624(c)(1).

In its previous form, Section 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter. 18 U.S.C. § 3624(c)(2). Now, as amended, Section 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *Id.*; FSA § 602.

Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations. The BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, starting with the inmates incarcerated at facilities that

5

have experienced COVID-19 cases (FCI Oakdale, FCI Danbury, FCI Elkton) and similarly situated facilities to determine which inmates are suitable candidates for home confinement.  Federal Bureau of Prisons, BOP Update on COVID-19 & Home Confinement, *www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp* (last visited Jan. 25, 2021).  To date, the BOP has transferred more than 20,000 inmates to home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Jan. 25, 2021).

As noted above, the BOP has exclusive authority to determine the placement of prisoners.  *See* 18 U.S.C. § 3624(c)(2).  Neither the CARES Act nor the FSA alters this authority.  *See United States v. James*, Cr. No.15-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019); *see also Xiao v. La Tuna Fed. Corr. Inst.*, Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Moreover, Courts have consistently held that placement questions are not reviewable.  *See*, *e.g.*, 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine

6

[defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP."); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at *1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025, at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Howard*, Civ. No. 3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019). Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement." *James*, 2020 WL 1922568, at *5 (citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

In short, because release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate. *See* 18 U.S.C. § 3624(c). Accordingly, to the extent that Libby seeks release to home confinement, the Court respectfully denies his Motion because it lacks the authority to consider his request.

**II.     Compassionate Release**

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include

7

(1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.  U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement."  Statement.  The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable."  18 U.S.C. § 3582(c)(1)(A).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A).  Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[7]  *Id.*

---

[7]     Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

8

The record reflects that Libby requested compassionate release from the warden at Fairton FCI on June 24, 2020 but does not indicate a response. (Addend. Ex. 1 at 1.) Because more than 30 days have passed, the Court finds that Libby has exhausted his administrative remedies and considers his Motion on the merits.

Notwithstanding, after a careful review of Libby's Motion, his multiple supplements and replies, and supporting documentation including his Medical Records, the Court finds that his circumstances do not meet the high standard necessary for Compassionate Release. While Libby tested positive for COVID-19 in June, the Court cannot conclude that he currently suffers from any chronic or current medical condition that diminishes his ability to provide self-care in prison and from which he is not expected to recover.[8] *See, e.g.*, *United States v. Somers*, Cr. No. 18-96 (DWF), 2020 WL

---

[8] While the Court is sympathetic to Libby having already suffered from the virus, the CDC does not include prior infection as a condition that increases his risk for severe infection if he were to contract the virus again. *See* CDC, People of Any Age with Underlying Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited Jan. 25, 2021). The Court recognizes Libby's concern about lingering effects from the virus, including his concern that the virus damaged his heart; however, Libby's Medical Records reflect that this condition is being monitored and currently does not diminish his ability to provide self-care or participate in daily exercise while in prison. (*See* Medical Records at 1.)

The CDC does indicate that being a current or former smoker can increase a person's risk of severe illness should they contract COVID-19; however, there is nothing to indicate that Libby's history of smoking limited or will limit his ability to provide self-care while in prison, even when he previously contracted the virus. (*See id.*)

Finally, the Court acknowledges that some ethnic groups, including Native Americans, have been disproportionately impacted by COVID-19. *See* CDC, CDC data show disproportionate COVID-19 impact in American Indian/Alaska Native populations, *https://www.cdc.gov/media/releases/2020/p0819-covid-19-impact-american-indian-alaska-native.html* (last visited Jan. 25, 2021.) For the same reasons stated above, the

5097097, at *1, 4 (D. Minn. Aug. 28, 2020) (denying compassionate release to prisoner with prior COVID-19 infection because it did not qualify as extraordinary or compelling reason); *United States v. Jovan Jonas Gentle*, Cr. No. 18-0279 (DWF), 2020 WL 4018216, at *3 (D. Minn. July 16, 2020) (same).

While the Court recognizes that Libby's fear related to the COVID-19 pandemic, particularly having already contracted the virus once and his belief that staff are largely responsible for continued cases of the virus in his facility, this Court agrees with others that a generalized fear is insufficiently extraordinary or compelling to warrant immediate release.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).  It is truly unfortunate that a number of inmates at Fairton FCI have been infected with COVID-19 and that one inmate has died.  It is promising, though, that the facility was able to provide appropriate medical care such that nearly all inmates who contracted the virus, including Libby, successfully recovered.  Moreover, Fairton FCI continues to employ measures to mitigate the spread of COVID-19.[9]  Sadly, until there is a vaccine, some level of

---

Court also finds this reason, alone or in combination with Libby's other circumstances, fails to meet the demanding standard necessary to warrant compassionate release.

[9]     The Court notes that effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system."  *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited Jan. 6, 2021). Those steps include a limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates.  (*Id.*)  The BOP periodically updates its Plan and is currently in Phase Nine.  Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-*

continued spread is inevitable. In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

While the Court understands the gravity of the COVID-19 pandemic and is mindful of Libby's concerns, the Court finds that the circumstances, alone or in combination, do not present an extraordinary and compelling reason to warrant release. Moreover, the Court finds that even if Libby's circumstances were sufficiently extraordinary and compelling, it cannot overlook Libby's extensive criminal history to now conclude that he no longer poses a risk to the community after serving just a fraction if his sentence.[10]  (*See* Doc. No. 106 ¶¶ 39-52 (detailing criminal history).)  Likewise, the Court finds that the § 3553(a) sentencing factors also weigh against release. *See* 18 U.S.C. § 3582(c)(1)(A); *see also* Statement.  Specifically, the Court finds that such a significant sentence reduction would not would adequately address the seriousness of the

---

*Phase-9-COVID-Action-Plan.pdf.* (last visited Jan. 25, 2021). To the extent Libby feels that the staff in his facility fail to comply with the required safety protocol, the Court encourages him to contact the warden at his facility.

The BOP is also exercising greater authority to designate inmates for home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Jan. 6, 2021).  Since March, the BOP has transferred nearly 20,000 inmates to home confinement.  *Id.*

[10]    The Court understands that Libby strongly contests any argument that he poses a threat to the safety of the community in part because he has accepted responsibility for his actions, he has a satisfactory BOP disciplinary record, and he has a safe place to stay. (*See* Reply 1 at 6-7; Reply 2 at 12-13.)  Notwithstanding, for the reasons stated above, the Court finds that release is not appropriate at this time.

charges of Libby's conviction, promote respect for the law or provide a just punishment.[11]

## CONCLUSION

For the reasons set forth above, the Court finds that it lacks authority to consider Libby's Motion under the CARES Act because the decision of where to place a defendant is solely within the BOP's discretion to dictate. The Court also finds that Libby is ineligible for Compassionate Release because he has not demonstrated an extraordinary and compelling reason to warrant release. Moreover, the Court finds that the § 3553(a) sentencing factors also weigh against release. Accordingly, the Court respectfully denies Libby's Motion.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant William Ike Libby's *pro se* motion for compassionate release (Doc. No. [157]) and request for appointment of counsel (Doc. No. [161]) are respectfully **DENIED**.

---

[11] While the Court finds that release is not appropriate at this time, it commends Libby for his commitment to rehabilitation and accomplishments while incarcerated. It is clear that Libby has family and friends that care very much about his well-being; the Court encourages him to continue his efforts so that he may be the best version of himself when he is released.

2. Defendant's request for an extension of time to file his reply (Doc. No. [175]) and his supplemental motion (Doc. No. [185]) are also **DENIED AS MOOT**.

Date:  January 26, 2021                             s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge